## A01A1289. CLARK v. THE STATE.
(549 SE2d 520)

ELDRIDGE, Judge.

On January 14, 2000, Helen E. Clark entered a negotiated plea of guilty under *North Carolina v. Alford,* 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970), in the Superior Court of Lumpkin County to the offenses of burglary and theft by taking. Clark was sentenced on the same day to ten years probation, ninety-six hours of community service, court costs, a $1,000 fine, and $2,895 restitution.[1] On February 14, 2000, Clark filed a motion to withdraw her plea of guilty. After hearing evidence, the trial court denied Clark's motion to withdraw

---

[1] For the purpose of sentencing the trial court merged the theft by taking charge into the burglary charge.

the plea of guilty in an order dated October 6, 2000. Clark appeals from this order, enumerating as her sole error the trial court's denial of her motion to withdraw her guilty plea. Clark argues that because she was illiterate, was under the care of a psychiatrist for treatment of depression, and was taking medication for such condition, the State failed to carry its burden of showing that her plea was knowing and voluntary. We disagree and affirm.

> [O]nce sentence is pronounced (as occurred in this case), a withdrawal of a plea is within the sound discretion of the court, and this discretion will not be disturbed unless there is a manifest abuse of discretion. After a prisoner raises the question of the validity of his plea of guilty, the burden is on the state to show that the plea was intelligently and voluntarily entered. The state may accomplish this end by two means, (1) showing on the record of the guilty plea hearing that the defendant was cognizant of all of the rights he was waiving and the possible consequences of his plea; or (2) fill a silent record by use of extrinsic evidence that affirmatively shows that the guilty plea was knowing and voluntary.

(Citations and punctuation omitted.) *Craft v. State*, 234 Ga. App. 305, 307 (506 SE2d 663) (1998); *Miller v. State*, 241 Ga. App. 397 (527 SE2d 571) (1999).

At the time Clark entered her guilty plea, she was represented by counsel which she had retained. Prior to the trial court accepting Clark's guilty plea, a written plea petition was completed by Clark and her attorney, and the trial court orally questioned Clark. During the dialogue between the trial court and Clark, Clark did not have any difficulty understanding the questions that were asked of her and responded appropriately. The trial court asked Clark about her lack of formal education. Clark responded that there were "too many in the family" for her to attend school; that she could not read or write; but that she had "a lot of common sense." Clark further indicated that she was employed and worked as a cook in a restaurant and as a house cleaner. When asked if she was under the influence of drugs, Clark stated that the "[d]octor's got me on antidepressants." Clark went on to explain that she was taking Prozac. Clark indicated that both she and her husband had talked extensively with her attorney; that her attorney had read the indictment to her; and that she understood the charges against her.

While the transcript of the guilty plea indicated that there was no initial, audible response to the questions relating to her knowledge that she was present for a plea, later during the proceeding, Clark affirmed that she was pleading guilty to the charges and

acknowledged that she understood she was waiving certain rights, i.e., the presumption of innocence, a jury trial, the confrontation of witnesses, the right to subpoena witnesses, the right to testify and offer other evidence, assistance of counsel during trial, and the right not to incriminate herself. See Uniform Superior Court Rule 33.8. After the trial court made a lengthy inquiry ensuring that Clark understood what rights she was waiving if she entered a guilty plea, the trial court once again asked Clark, "You still want to plead guilty, Ms. Clark?" Clark responded, "Yes, sir."

Further, during the guilty plea, a substantial amount of time was spent dealing with the fact that Clark was pleading guilty under *North Carolina v. Alford,* supra. In response to the trial court's inquiry if she was admitting to participating in the burglary of the home of Mr. Krell on October 12, 1994, Clark denied participation. When asked why she was pleading guilty, Clark's attorney interjected and provided the factual basis for the trial court's acceptance of an *Alford* plea. Counsel set forth what the defense understood the State's evidence to be and stated that "We have a negotiated plea that will be for probation, and I think that that's why we're entering it. But there's certainly enough evidence that, if the jury saw it as the State would present it they could convict on that." The trial court then asked, "So you're pleading guilty to the offense of burglary, saying, I'm not going to say I did it but the evidence on the other side is so that I think that the jury might find me guilty and I may go to prison. I don't want to do that. Is that what you're telling me?" Clark responded, "Yes, sir."

Clark affirmed that no one had used any threats, force, pressure, or other means to intimidate her into pleading guilty. The trial court informed Clark of the maximum sentence for the charges against her, and Clark indicated she understood the maximum sentence. Clark further indicated that she understood the terms of her negotiated plea.

Clark further testified that, as she and her attorney went over the questions on the written plea petition, her attorney explained the questions to her. The written plea petition reiterated her understanding of the charges against her, the rights she was giving up by pleading guilty, the maximum sentence on the charges, and the negotiated plea. Clark also indicated in response to questions on the form that she was not under the influence of alcohol or other intoxicants and she did not suffer from any mental or emotional disability. Clark testified that all the answers on such form were true and correct. After the trial court informed Clark of the sentence he would impose, Clark again stated, pursuant to the trial court's inquiry, that she still wished to enter a guilty plea.

At the hearing on the motion to set aside the guilty plea, Clark's

trial counsel testified that he knew Clark was taking Prozac, but that she had stated to him that she understood why they were in court that day and that her medication did not interfere with her ability to understand the questions asked of her. Counsel testified that, while Clark was nervous and exhibited stress on the day she pled guilty, she appeared to understand why she was in court and the decisions she was making. Counsel further testified that "[Clark] could give me responses that seemed appropriate to the questions." Counsel went on to testify that he explained to Clark on several occasions, including the morning she entered her plea, the risks of going to trial, the consequences of entering a guilty plea, and that she was entitled to a jury trial. Counsel testified that Clark had difficulty deciding whether to plead guilty and asked him many appropriate questions on what could happen if she decided to go to trial, what would happen if she pled guilty, and what probation would entail. Counsel went on to testify that the final decision to enter a guilty plea was made by Clark after she consulted with her husband.

Clark's husband testified that he and Clark met with her attorney on many occasions; that on the day Clark entered a guilty plea, he and Clark talked with her attorney prior to entering the guilty plea; that Clark's attorney went over the plea petition with Clark in his presence; that he understood the charges against Clark; and that Clark appeared to understand the questions that were asked of her during the guilty plea hearing. Clark's husband further testified that Clark told her attorney that she was not suffering from any mental or emotional disability and that she was not under the influence of any alcohol, drugs, or intoxicants and that he did not correct her statement. Clark's husband also testified that while Clark did not have any formal education, she had a lot of common sense and had the ability to sit down and figure things out.

Clark called her treating psychiatrist, Jeffrey Klopper, to testify. Dr. Klopper was not qualified as an expert and was called as a lay witness only. Dr. Klopper testified that he had not had a chance to review Clark's file before coming to court. Dr. Klopper testified that he first saw Clark in 1997 and that he had been treating her for depression, anxiety, and legal and family problems. Dr. Klopper could not initially remember what specific medications he had prescribed for Clark, but vaguely remembered prescribing some type of antidepressant and antianxiety medications. After reviewing some letters and notes, Dr. Klopper testified that over the course of Clark's treatment, he had prescribed Prozac, Doxepin, and Xanax and that in addition to depression, anxiety, and legal and family problems, Clark had previously reported that she felt suicidal. Dr. Klopper testified, however, that he could not tell the trial court what condition Clark was in, or would have been in, on the date of her guilty plea.

The written plea petition, the transcript of the guilty plea proceeding, and the record of the hearing on the motion to withdraw the plea clearly satisfy the State's burden of proving that Clark's plea was knowing and voluntary. Contrary to Clark's assertions, the record shows that her answers to questions were appropriate and precise; that she knew the charges pending against her; that she knew what rights she was giving up by entering a guilty plea; and that she responded affirmatively to each and every question asked by the trial court as to her voluntary waiver of her rights. Further, Clark appeared to understand the concept of an *Alford* plea and expressed her desire to plead guilty, even though she felt she had not actively participated in the crimes she was charged with, in order to ensure that she would receive probation. Accordingly, the State having met its burden, there was no abuse of discretion in the trial court's denial of Clark's motion to withdraw her guilty plea.

*Judgment affirmed. Andrews, P. J., and Miller, J., concur.*

DECIDED MAY 24, 2001.

*Summer & Summer, Daniel A. Summer,* for appellant.

*N. Stanley Gunter, District Attorney, Lynn Akeley-Alderman, Assistant District Attorney,* for appellee.