A07A1103. FROST v. THE STATE.
(649 SE2d 878)

PHIPPS, Judge.

Joel Michael Frost appeals the trial court's denial of his motion to withdraw his guilty plea. For the reasons set forth below, we affirm.

Frost went to trial before a jury on seven counts of identity fraud. Shortly before closing arguments were to occur, Frost entered an *Alford*[1] plea to the charges and the trial court sentenced him. Frost was represented by counsel at the time of his trial and plea. Several days later, Frost filed a pro se motion to withdraw his guilty plea. A month later, represented by new counsel, he filed a motion to discharge his indictment and for acquittal, and he amended his motion to withdraw the plea, arguing that he had not entered the plea intelligently and voluntarily and that his trial counsel had provided ineffective assistance to him. After receiving evidence at a hearing, the trial court denied the motions.

> A ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of such discretion. When the validity of a guilty plea is challenged, the state bears the burden of showing affirmatively from the record that the defendant offered his plea knowingly, intelligently, and voluntarily. However, if the motion to withdraw is based on an ineffective assistance of counsel claim, the defendant bears the burden of showing that, had it not been for his attorney's deficient representation, a reasonable probability exists that he would have insisted on a trial.[2]

The record reflects that the trial court conducted a guilty plea hearing at which the assistant district attorney questioned Frost. Frost testified that he could hear and understand the statements being made and questions being asked by the prosecutor and the court; that he understood he was entering a guilty plea; that he understood the charges and had discussed the charges and the case with his counsel; that he understood the rights he was giving up by pleading guilty; that he understood that the prosecutor had recommended a fifteen-year sentence of which ten years would be served in prison; that he understood he would be sentenced as a recidivist; and

---

[1] *North Carolina v. Alford*, 400 U. S. 25 (91 SC 160, 27 LE2d 162) (1970). "[A] defendant's contention of innocence is an integral part of an *Alford* plea." *Schlau v. State*, 282 Ga. App. 460, 461 (1) (638 SE2d 895) (2006). A defendant making an *Alford* plea has concluded that it is in his best interest to plead guilty despite his contention of innocence. See id.

[2] *Muckle v. State*, 283 Ga. App. 395, 397 (641 SE2d 603) (2007) (footnote omitted).

that he understood the court was not bound by the state's recommendation and could sentence him to a maximum of 100 years in prison.

At the hearing, Frost stated that he was taking medication. The prosecutor asked if this medication affected Frost's ability to reason or think and Frost responded, "I had a suicide attempt the other day, but I think I'm all right." Later, the prosecutor asked Frost if anyone had made threats or promises to influence his plea, and Frost replied, "I can't say that it's completely voluntary, but I'm willing to plead guilty." This response led to the following colloquy:

> Prosecutor: Sir, if it's not voluntary, we can't go forward.
> A. Well, it's my own best interest.
> Q. Sir, has anyone made any threats or promises to induce you to plead guilty in this case?
> A. No.

Frost expressed only partial satisfaction with the advice and services of his trial counsel, and when the prosecutor asked him if he wanted to withdraw his plea, Frost responded, "I don't have a choice." This prompted the trial court to state:

> Just a minute. You do have a choice. We just about completed the trial. All we have left is final argument and charge to the jury and we'll see what kind of verdict they come back with, which is fine with me, I just assume [sic] go through with it. But if you don't want to plead guilty at this time, we will just continue with the trial.

Frost then responded, "I will plead guilty." Upon further questioning, he explained that he had gone into trial anticipating a positive outcome but felt that his counsel's performance at trial had compromised his defense. The following discussion ensued:

> The Court: Well, you could continue with the trial, and if you lose, you can appeal and raise those issues on appeal.
> Frost: I can't take a chance like that to get 90 or 100 years, your honor.
> The Court: Again, it's up to you.
> Frost: I'm going to take the plea.

Later in the hearing, the prosecutor again asked Frost if he wished to enter a guilty plea and Frost replied, "Considering the circumstances and the facts surrounding the case, yes." Frost expressed his belief that it was in his best interest to plead guilty because he thought there was a good chance, based on the trial evidence, that the jury

would find him guilty. When asked if he was entering the plea under his own free will, he responded, "Under *Alford versus North Carolina*, yes."

The trial court then found that Frost had entered his guilty plea freely, voluntarily, knowingly and intelligently, and sentenced Frost to a total of fifteen years with ten to serve in prison and five to serve on probation.

1. Frost asserts that, at the time of his plea hearing, he had stopped taking needed medication and was suffering from sleep deprivation, racing thoughts and other psychological turmoil. He also argues that he was denied the right to represent himself at trial and that he had lost confidence in his counsel, leading him to feel forced into a plea because he feared an unfavorable jury verdict. Frost claims that the combination of these factors put him into a state of mind that prevented him from making a voluntary, knowing and intelligent plea. Although Frost developed evidence on all of these points at the hearing on his motion to withdraw plea, the trial court did not find that these factors invalidated the plea.

The record shows that Frost proposed pleading guilty to his trial counsel during trial. He was composed and participated intelligently at his plea hearing. He answered all of the questions asked him by the court and the prosecutor in an appropriate and precise manner. He demonstrated that he knew the charges against him, that he understood he was waiving rights, and that he recognized the possible consequences of his plea. He was able to understand and discuss with the court the legal concept behind an *Alford* plea.

Although Frost indicated to the trial court that he had attempted suicide, he stated that he was "all right." The record of the plea hearing contains no evidence that he was laboring under a physical or mental impairment that prevented him from being able to understand the proceedings,[3] and the record clearly demonstrates that Frost did understand the proceedings. "To the extent that his testimony at the hearing on his motion to withdraw contradicted his testimony at the plea hearing, [for instance, as to whether Frost was

---

[3] See *Brown v. State*, 259 Ga. App. 576, 577-578 (578 SE2d 188) (2003) (affirming trial court's denial of motion to withdraw plea based on argument that at plea hearing defendant was taking medication that made him "dizzy" but withheld this information from court); *Clark v. State*, 249 Ga. App. 722, 726 (549 SE2d 520) (2001) (affirming trial court's denial of motion to withdraw plea based on argument that defendant was on antidepressants, finding defendant's answers to court's questions were "appropriate and precise" and she indicated that she understood the nature of her *Alford* plea). Compare *Waire v. State*, 211 Ga. App. 69, 70-71 (438 SE2d 142) (1993) (trial court erred in denying motion to withdraw guilty plea where defendant, who was taking several medications for psychological problems, required several minutes of questioning in order to remember name of state in which hearing was occurring).

taking medication at the time of his plea,] credibility issues arose, which only the trial court could resolve."[4]

At his plea hearing and in his motion to withdraw the plea, Frost expressed dissatisfaction with his counsel and concern that he would not be acquitted at trial. The record indicates, however, that although Frost initially wanted to represent himself, by the time of his trial he had agreed to be represented by counsel. Moreover, pressures such as a lack of faith in one's trial counsel do not necessarily give rise to the manifest injustice required to withdraw a plea after sentencing.[5] "Duress is a question of fact for the trial court to resolve, whose decision we will only reverse if it constitutes an abuse of discretion."[6] The trial court summarized Frost's perceived duress as follows:

> I think Mr. Frost had two choices, neither of which he liked. He could proceed and let the jury decide or he could plead. He didn't want to do either one, but those were his only two choices.

The record shows that Frost voluntarily, knowingly and intelligently entered his guilty plea. We find that the trial court did not abuse its discretion in denying his motion to withdraw the plea on this ground.[7]

2. Frost asserts that he received ineffective assistance of counsel in entering his guilty plea. Whether a defendant received ineffective assistance of counsel is a mixed question of law and fact; we review the trial court's factual findings under a clearly erroneous standard and its legal conclusions de novo.[8]

Frost argues that his counsel was deficient in two respects: first, that his counsel erroneously advised him that a felony conviction upon a trial would subject him to sentencing as a recidivist under OCGA § 17-10-7 (a) and (c); and second, that at sentencing his counsel failed to object to the use of certain prior convictions in categorizing him as a recidivist for sentencing. Specifically, Frost argues that one of his prior felony convictions should not have been considered because it resulted from a Cobb County jury trial in which he was pro

---

[4] *Voils v. State*, 266 Ga. App. 738, 742 (2) (598 SE2d 33) (2004); see also *Schlau*, supra at 462 (3) (upholding denial of motion to withdraw plea where, four months after entering plea, defendant first claimed that at time of plea he was depressed and on psychotropic medication).

[5] See *Shaheed v. State*, 276 Ga. 291, 291-292 (2) (578 SE2d 119) (2003) (finding no manifest injustice despite defendant's claim that his lack of faith in trial counsel and pressure he felt from his family and from jury selection process "coerced" him into pleading guilty).

[6] *Schlau*, supra at 462 (2) (citation and punctuation omitted).

[7] See id.; *Norris v. State*, 277 Ga. App. 289, 292 (1) (626 SE2d 220) (2006); *Brown*, supra at 578-579; *Clark*, supra at 726; *Thornton v. State*, 180 Ga. App. 274, 275 (349 SE2d 23) (1986).

[8] See *Suggs v. State*, 272 Ga. 85, 87-88 (4) (526 SE2d 347) (2000).

se, and that two prior felony convictions from Douglas County should have been treated as a single conviction. Frost states that he entered his guilty plea based on the false belief that he was a recidivist and thus ineligible for parole.

At the hearing on the motion to withdraw plea, the trial court stated that it believed it was appropriate to use the Cobb County conviction for purposes of OCGA § 17-10-7, but nevertheless disregarded that conviction. Moreover, the trial court did treat the two Douglas County convictions as a single conviction for purposes of that statute. After doing so, the court identified more than three felony convictions that had been introduced into evidence during the trial or at the sentencing hearing. Frost does not point to anything in the record to show that the trial court erred in identifying these three additional prior convictions. Thus Frost has not shown on appeal that his trial counsel advised him wrongly concerning his recidivist status, nor has he shown that his counsel fell below an objective standard of reasonableness in not objecting to the use of certain prior convictions for sentencing under these circumstances.[9] We find that Frost has failed to demonstrate ineffective assistance of counsel.

*Judgment affirmed. Johnson, P. J., and Mikell, J., concur.*

DECIDED JULY 19, 2007.

*Hall, Hirsh & McDaniel, James M. McDaniel*, for appellant.
*Gwendolyn Keyes Fleming, District Attorney, Leonora Grant, Assistant District Attorney*, for appellee.

---

[9] See *Hill v. Lockhart*, 474 U. S. 52, 58-59 (106 SC 366, 88 LE2d 203) (1985) (discussing requirements for showing ineffective assistance of counsel in guilty plea context); *Muckle*, supra at 397 (same).