**THIRD DIVISION**
**MIKELL, P. J.,**
**MILLER and RAY, JJ.**

NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.
(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)
http://www.gaappeals.us/rules/

**August 10, 2012**

# In the Court of Appeals of Georgia

A12A1404. MONTFORD v. THE STATE.

MIKELL, Presiding Judge.

After Cozy Blackmon, a one-year-old child, died from hot water burns suffered while in the care of appellant Beauprue Montford, Montford was indicted on charges of felony murder (Counts 1-3), aggravated battery (Count 4), aggravated assault (Count 5), and cruelty to children in the first degree (Count 6). On June 20, 2011, following a hearing at which he was represented by counsel, Montford entered a negotiated guilty plea to Count 1, reduced to involuntary manslaughter, and to Counts 4, 5, and 6; and the state nol-prossed the other two felony murder counts (Counts 2 and 3). Montford was sentenced, in accordance with the state's recommendation, to a total of 25 years to serve (10 years on Count 1; 20 years on each of Counts 4 and 5, concurrent with Count 1; and 15 years on Count 6, consecutive to Count 1).

Montford asked to withdraw his guilty plea in a pro se letter to the court dated June 27, 2011. He was appointed new counsel, who filed a formal motion to withdraw on his behalf. Following a hearing, the motion was denied. Montford now brings this out-of-time appeal,[1] asserting that the trial court erred in accepting his guilty plea because it was not knowingly and voluntarily entered. We find no error and affirm.

Because Montford had already been sentenced when he moved to withdraw his guilty plea, he could withdraw his plea only to correct a manifest injustice,[2] such as would exist, for example, where "the guilty plea was entered involuntarily or without an understanding of the nature of the charges."[3] On a defendant's challenge to the validity of his guilty plea, the state bears the burden of showing that the defendant offered his plea "knowingly, intelligently, and voluntarily."[4] The state may sustain this burden by showing from the record of the guilty plea hearing "that the defendant was cognizant of all of the rights he was waiving and the possible consequences of

---

[1] Montford's application for discretionary appeal was granted pursuant to OCGA § 5-6-35 (j).

[2] See *Maddox v. State*, 278 Ga. 823, 826 (4) (607 SE2d 587) (2005).

[3] (Citation and punctuation omitted.) Id.

[4] (Footnote omitted.) *Frost v. State*, 286 Ga. App. 694 (649 SE2d 878) (2007).

his plea."[5] Because a trial court's ruling on a motion to withdraw a guilty plea lies within the sound discretion of the trial court, it will not be disturbed on appellate review absent a manifest abuse of such discretion.[6] Moreover, in ruling on the motion, "the trial court is the final arbiter of all factual disputes raised by the evidence. If evidence supports the trial court's findings, we must affirm."[7]

Montford contends that his plea was invalid because he was coerced by his attorney to plead guilty and because he was incompetent to plead due to mental incapacity. Contrary to Montford's contention, however, the transcript of the guilty plea hearing shows on its face that he entered his plea knowingly, intelligently, and voluntarily.

At the plea hearing, the prosecutor first set forth the factual basis for the charges against Montford, showing that, on April 2, 2010, while alone with Montford, the victim was severely burned by immersion in scalding hot water; and that the child

---

[5] (Punctuation and footnote omitted.) *Hubbard v. State*, 301 Ga. App. 388 (687 SE2d 589) (2009). Accord *Boykins v. State*, 298 Ga. App. 654, 655 (2) (680 SE2d 665) (2009).

[6] *Johnson v. State*, 304 Ga. App. 684 (697 SE2d 224) (2010).

[7] (Footnote omitted.) *Trapp v. State*, 309 Ga. App. 436-437 (710 SE2d 637) (2011).

died a few days later from these injuries. Under questioning by the state, Montford then testified that his attorney, Ingrid McGaughey, had explained the charges against him; that he had thoroughly discussed his case with her; and that he was satisfied with her services and advice. He further testified that no promises or threats had been made to influence him to plead guilty; and that he was not under the influence of alcohol or drugs. He was informed of the rights he was waiving by pleading guilty and not standing trial; he testified that he understood; and he waived the relevant constitutional rights. He testified that he understood the maximum sentence he faced for the charges against him; and that he understood the sentencing recommendations made by the state.

When Montford was asked how he pled, he first answered, "I can't plead guilty." He and his attorney then had a discussion off the record, after which Montford stated, "I will plead guilty to it." He further stated that he was, in fact, guilty; and that he wanted to plead guilty. He said that he understood all the questions and that he had given truthful answers; and he signed the guilty plea questionnaire to that effect. In answer to questions from the court, Montford reiterated that he had understood all the earlier proceedings and that he had no questions. He was given

opportunity to consult further with his attorney, after which the court accepted his plea.

At the hearing on his motion to withdraw the guilty plea, Montford testified that he had not wanted to plead guilty but he felt "cornered" because his attorney was "pushing" him; and that after he said, "I can't plead guilty," his attorney told him that he either had to plead or go to trial, so he "felt obligated" to enter the plea. He further testified that he was not competent to enter a plea because he was delusional and he was under the control of another "stronger personality," whom he called "Marcus." On cross-examination, Montford admitted that neither his sister nor his fiancée, the mother of the victim, knew about "Marcus." Montford explained that "you don't get Marcus unless . . . I just wake up in the bad . . . mood." Montford testified that he, Montford, answered the questions at the plea hearing, but that "Marcus" signed the plea documents. The record shows, however, that the plea documents were signed by Montford, who could read and write and had graduated from high school. Montford stated that he had seen a psychologist on one occasion, but he could not remember how old he was or the doctor's name.

McGaughey also testified at the hearing on the motion to withdraw. She had represented clients in hundreds of felony cases over the past 12 years; and she had

handled several murder cases. She testified that, prior to his guilty plea, she spoke with Montford about his case numerous times, both in person at the jail and by phone; she investigated his case; and she discussed with him the pros and cons of his case, the state's evidence against him, and trial strategy. She testified that she explained to Montford the options available to him at the plea hearing; and that she did not force him to take a plea that day. She stated that Montford never indicated to her that he did not understand the proceedings or questions at the plea hearing; and that although he told her he had been diagnosed as bipolar, she could not discover that he had any treatment history. She had never heard of "Marcus." She had worked with numerous clients who had mental problems, but she testified that Montford never exhibited any signs of mental illness or of being unable to understand.

The record in this case, summarized above, amply supports the trial court's conclusion that Montford's guilty plea was made voluntarily, knowingly, and intelligently. On appeal, Montford essentially challenges the trial court's credibility determinations, asking us to reweigh the evidence. This we cannot do.[8] The trial court was authorized to disbelieve Montford's self-serving testimony and to find that he

---

[8] Id. at 438 (1) ("Credibility of witnesses and the weight to be given their testimony is a decision-making power that lies solely with the trier of fact") (punctuation and footnote omitted).

6

knowingly, freely, and voluntary entered his plea.[9] Therefore, based on the record, we conclude that the state met its burden of showing that Montford offered his plea knowingly, intelligently, and voluntarily; and the trial court did not abuse its discretion when it denied Montford's motion to withdraw his guilty plea.[10]

*Judgment affirmed. Miller and Ray, JJ., concur.*

---

[9] See id. (upholding finding that guilty plea was entered knowingly and voluntarily, despite defendant's later claim that he was "confused" and "not in his right mind"). Accord *Boykins*, supra at 656 (2) (question of duress in entering guilty plea was question of fact for trial court to resolve).

[10] See *Likely v. State*, 293 Ga. App. 484, 487 (667 SE2d 648) (2008) (guilty plea upheld where record contained no evidence, other than defendant's own self-serving statements at withdrawal hearing, that he labored under any impairment or that he was subject to duress at plea hearing).