**SECOND DIVISION**
**BARNES, P. J.,**
**MILLER, and RAY, JJ.**

**NOTICE: Motions for reconsideration must be**
***physically received* in our clerk's office within ten**
**days of the date of decision to be deemed timely filed.**
**(Court of Appeals Rule 4 (b) and Rule 37 (b), February 21, 2008)**
**http://www.gaappeals.us/rules/**

**May 20, 2013**

# In the Court of Appeals of Georgia

A13A0471. MALONE v. THE STATE.

BARNES, Presiding Judge.

Marlo A. Malone was indicted for committing the crimes of incest, aggravated child molestation, aggravated sexual battery, aggravated sodomy, and child molestation. Following a hearing, Malone entered a non-negotiated guilty plea on all counts, and he was sentenced to serve thirty years in confinement.[1] Malone appeals from the trial court's subsequent denial of his motion to withdraw his guilty plea. Finding no abuse of discretion, we affirm.

---

[1] The trial court sentenced Malone to 30 years to serve on the count of child molestation, 30 years to serve on the count of aggravated child molestation, 30 years to serve on the count of aggravated sodomy, 20 years to serve on the count of aggravated sexual battery, and 20 years to serve on the count of incest, with all the sentences to run concurrently.

Malone argues that the State failed to show that he entered his plea with an understanding of the consequences because he was under the influence of medication when he entered his plea. Whether to grant a motion to withdraw a guilty plea is "within the sound discretion of the trial court and will not be disturbed absent a manifest abuse of such discretion." (Footnote omitted.) *Frost v. State*, 286 Ga. App. 694 (649 SE2d 878) (2007). Upon a challenge to the validity of a guilty plea, the State has "the burden of showing affirmatively from the record that the defendant offered his plea knowingly, intelligently, and voluntarily." (Footnote omitted.) Id. The State's burden may be met "by (1) showing on the record that the defendant was cognizant of his rights and the waiver of those rights, or (2) using extrinsic evidence that shows affirmatively that the guilty plea was entered knowingly and voluntarily." (Footnote omitted.) *Shaw v. State*, 302 Ga. App. 363, 364 (1) (691 SE2d 267) (2010).

The evidence shows that the State initially offered Malone a negotiated plea of 20 years, to serve 12. Malone told his attorney that he wanted to accept the plea offer, but Malone attempted to commit suicide on the day he was to appear in court to enter the plea. At the subsequent plea calendar Malone changed his mind and declined to enter a plea, although he met with his counsel later and indicated that he had made a mistake and did want to enter a plea. Malone's attorney then met with

2

Malone and his family and explained to them that the trial court had stated that any subsequent plea would be non-negotiated and could not be withdrawn.

At the commencement of the plea hearing, the trial court announced that jury selection for Malone's trial was scheduled to commence the following Monday and that "the Court doesn't do negotiated pleas . . . during the trial calendar," but that the case could be resolved if that was what Malone wished. The prosecutor, after confirming that if Malone entered a guilty plea it would be non-negotiated, described in detail the factual basis for the charges and recommended that Malone be sentenced to 25 year to serve 20. Malone's attorney confirmed that Malone wished to plead guilty, and he acknowledged that they had "thrown away" the State's previous plea offer, but asked the court to "temper this sentencing." Malone's attorney also represented to the trial court that Malone was currently being treated with Remeron, an anti-depressant medication, but that Malone had told him that he "is perfectly clear-headed today."

Malone took the stand and, under questioning by the State, represented that he was "under medicine." However, when asked "[a]re you under any alcohol, drugs or any other substance that interferes with your ability to understand what you are doing and think clearly at this time," Malone answered, "No." Malone confirmed, among

other things,[2] that he understood that the maximum sentences for the charges against him was two life sentences, followed by 80 years, and that the trial court was not bound by any promises or recommendations and could impose such a sentence. Malone then pled guilty to the charges, and the trial court accepted Malone's plea of guilty as freely and voluntarily given before sentencing him to serve 30 years in confinement.

At the hearing on Malone's motion to withdraw his guilty plea, Malone testified that he did not enter the guilty plea of his own free will. According to Malone, he was taking "Remerol," a depression medication, and when asked the "kind of effect" the drug had on him, he responded, "[j]ust tired, frustrated, aggravated." He also testified that he was taking medication for other illnesses, such as high blood pressure, but he did not know what those medications were, and he was "not really sure" if the other medications affected his ability to think. According to Malone, his state of mind at the hearing was such that he "wanted to actually go to

---

[2] In a series of questions and answers, Malone confirmed that his lawyer had explained the charges against him and that he understood: that he had the right to a jury trial; that he could have a jury trial by pleading not guilty or remaining silent; that he had the right to assistance of trial counsel; that he was entitled to the presumption of innocence; that he had the right not to incriminate himself; that he had the right at a jury trial to question witnesses against him and to subpoena witnesses on his behalf; and that he was giving up all those rights by pleading guilty.

sleep and never wake up again." Malone further maintained that he entered a guilty plea because he thought he was going to be sentenced consistently with the State's plea offer of "the 20 years to serve 12."

Malone's defense counsel testified that on the morning of the plea hearing he explained to Malone that it "was totally up to the judge whether or not he went along with the plea." According to counsel, he did not have any concerns about Malone's medications impacting on his ability to understand what was going on in court. And counsel "saw nothing at all that would make me think [Malone] did not know what he was doing."

Based on our review of the evidence, we find no error. "The record contains no evidence, other than [Malone's] own self-serving statements during the hearing on his motion to withdraw the plea, that he labored under any impairment at the time of the plea proceeding." *Brown v. State*, 259 Ga. App. 576, 578 (578 SE2d 188) (2003). On the other hand, Malone's testimony during the plea hearing as well as the testimony of defense counsel during the hearing on the motion to withdraw the plea show that although Malone was taking an anti-depressant medication, his mental faculties were not impaired thereby and he understood that the trial court was not bound by the State's initial plea offer in determining his sentence. See *McDowell v.*

*State*, 282 Ga. App. 754, 756 (639 SE2d 644) (2006) (where trial court was aware that defendant was taking prescribed medications and defendant's testimony at plea hearing was that his prescribed medications did not affect his ability to understand the plea proceedings, trial court was not under any duty to make further inquiry into the medication's effect on defendant's ability to competently enter his plea). To the extent that the evidence is in conflict, it was for the trial court to determine the credibility of Malone's testimony at the hearing on the motion to withdraw. See *Brown*, 259 Ga. App. at 578. The evidence shows that the State carried its burden of showing that Malone offered his plea knowingly, intelligently, and voluntarily, and we find that the trial court did not abuse its discretion in denying Malone's motion to withdraw his guilty plea.

*Judgment affirmed. Miller and Ray, JJ., concur.*