**FIFTH DIVISION**
**MCFADDEN, P. J.,**
**BRANCH and BETHEL, JJ.**

**NOTICE: Motions for reconsideration must be *physically received* in our clerk's office within ten days of the date of decision to be deemed timely filed.**
**http://www.gaappeals.us/rules**

**January 3, 2018**

# In the Court of Appeals of Georgia

A17A2009. HALL v. THE STATE.

BETHEL, Judge.

Demarcus Tremayne Hall appeals the denial of his motion to withdraw his guilty plea to child molestation and aggravated stalking.[1] Hall argues that his guilty plea was coerced by comments made to him by a member of the Greene County Sheriff's Department and that he should have been permitted to withdraw his guilty plea. We disagree because the comments did not compel a finding of duress. Accordingly, we affirm.

The record shows that in November 2015, Hall was indicted for aggravated sexual battery, child molestation, criminal attempt to commit rape, and aggravated

---

[1] Hall contends that his motion to withdraw his guilty plea was mislabeled as a motion for a new trial, but that the parties agreed to treat it as a motion to withdraw a guilty plea.

stalking. At the hearing on his motion to withdraw his plea, Hall testified that, several days before his scheduled trial, he spoke for a couple of hours to the chief jailer of the Greene County Sheriff's Department whom Hall had known for approximately ten years and whom Hall referred to as "chief," regarding his upcoming case. Hall's summary of the conversation was that:

> He explained to me – when I first got in front of him, he was like, well, "I see that you're going to trial Monday." I was like, "Yes, sir, I am." Then he was like, "Well, you know, they have the odds stacked against you." I was like, "I understand that." But he was like, "It would be at a good point right now that you take a plea," because he had talked with [the prosecutor] and he talked with [defense counsel]. And it's not looking good. And I told the chief that if I take a plea, I'm going to be gone away from around my kids, so I said I was trying to fight this because it didn't happen. And I also told [defense counsel] that and when they – when they charged me with all these charges, I was telling the chief that they couldn't prove none of this. Even though it didn't happen, they still charged me with it . . . . I was also told by the chief I was innocent until proven broke . . . . And he explained it to me that if I can't afford an attorney that I was going to lose.

Hall testified that he did not initiate the conversation with the chief, that the chief approached him, and that the conversation took place outside the booking area and was not recorded. Hall further stated that the conversation influenced his decision to

2

plead guilty because the chief told Hall that if he did not take the plea but was found guilty that he would get a life sentence, and because the chief's statements made Hall believe that he would not get good representation from his public defender if he went to trial.

The chief testified he only spoke with Hall for approximately 15 minutes after Hall had requested to speak with him,[2] and that Hall regularly requested to speak with him. The chief acknowledged telling Hall how the sentence offered by the State as part of the plea deal differed from that which could result from Hall losing at trial. The chief further admitted to saying to Hall that he was "innocent until proven broke." But the chief denied making any comment about the deck being stacked against Hall, and further denied trying to influence Hall in any way.

Three days after the conversation between Hall and the chief, Hall agreed to plead guilty to child molestation and aggravated stalking.[3] In exchange, the State agreed not to prosecute Hall on the charges of aggravated sexual battery and criminal attempt to commit a felony, and not to seek sentencing of Hall as a recidivist. After

---

[2] A second officer confirmed that Hall had requested to speak with the chief.

[3] Hall concedes that he pled guilty freely and voluntarily, but that his "mind was messed up about . . . talking with the chief about the situation."

a plea hearing, the trial court approved the negotiated plea deal, and it determined through a colloquy with Hall that his guilty pleas were knowing and voluntary, , and that he had not been promised anything or threatened in any way. The trial court then imposed the sentence that had been agreed upon by the parties. Specifically, Hall received a total sentence of thirty years (with twenty-five of those to be served in confinement).

On June 22, 2016, Hall filed a pro se motion to withdraw his guilty plea, asserting no grounds in support of the motion. Hall subsequently obtained counsel who filed an amended motion to withdraw Hall's guilty plea arguing that Hall received ineffective assistance of counsel and that Hall was coerced into pleading guilty. Following a hearing, the trial court denied Hall's motion. This appeal followed.

Hall argues that he should have been allowed to withdraw his guilty plea because the chief's statements were improper and unduly influenced Hall's decision to plead guilty. "Although a guilty plea may be withdrawn anytime before sentencing, once a sentence has been entered, a guilty plea may only be withdrawn to correct a manifest injustice, and a trial court's refusal to allow withdrawal will not be disturbed on appeal absent a manifest abuse of discretion." *Platt v. State*, No. A17A1106, 2017

4

WL 3807815, at *2 ( 805 SE2d 112) (2017) (footnote and punctuation omitted). While the test for manifest abuse of discretion will vary from case to case, withdrawal of a guilty plea would be necessary to correct a manifest injustice where a defendant is denied effective assistance of counsel, or where the guilty plea was entered involuntarily or without an understanding of the nature of the charges. *See Platt*, 2017 WL 3807815, at *2. When a defendant enters a guilty plea but then subsequently challenges the validity of that plea, the State "may meet its burden of demonstrating that the plea was intelligently and voluntarily entered by showing on the record of the guilty plea hearing that the defendant was cognizant of all the rights he was waiving and the possible consequences of his plea." *Likely v. State*, 293 Ga. App. 484, 485 (667 SE2d 648) (2008) (footnote omitted).

Here, the State has met its burden by showing from the record, which contains a transcript of the guilty plea hearing, that Hall was cognizant of the rights he was waiving and of the possible consequences of his plea. At the guilty plea hearing, Hall told the trial court that he understood that he was charged with child molestation and aggravated stalking, and that the maximum sentence he could receive for each crime was thirty years, and that he could be sentenced as a recidivist to life without parole. He further stated that he understood that, upon his entry of a guilty plea, he would be

5

waiving the right to a trial by jury and other attendant rights. Hall acknowledged that no one had promised him anything of value or threatened him with harm to cause him to plead guilty. Further, Hall conceded at the hearing on his motion to withdraw his plea that he had pled guilty freely and voluntarily. He makes no argument on appeal regarding the effectiveness of his counsel, and he indicated to the court at his plea hearing that he was satisfied with his defense counsel's representation.

Hall's conversation with the chief does not render his plea involuntary. Hall and the chief gave different accounts regarding who initiated the conversation, as well as its length and content. But this conflict in testimony "is a matter of witness credibility, which the trial court was authorized to decide against [Hall]." *Likely*, 293 Ga. App. at 487 (footnote omitted). And while ill-advised and inaccurate, the statement that the chief admitted to making to Hall — that Hall was "innocent until proven broke" — did not compel a finding of duress. *See Frost v. State*, 286 Ga. App. 694, 697 (1) (649 SE2d 878) (2007) (duress "is a question of fact for the trial court to resolve, whose decision we will only reverse if it constitutes an abuse of discretion." (footnote omitted)). *See also Shaheed v. State*, 276 Ga. 291, 291-292 (2) (578 SE2d 119) (2003) (finding no manifest injustice despite defendant's claim that his lack of faith in trial counsel and pressure he felt from his family and the jury

6

selection process "coerced" him into pleading guilty); *Likely*, 293 Ga. App. at 486-488 (defendant's allegation at withdrawal hearing that he was scared and wanted to avoid a possible life sentence when he entered his guilty plea was insufficient to overturn trial court's denial of motion to withdraw plea, where plea transcript showed plea was voluntary, intelligent, and knowing); *Niako v. State*, 271 Ga. App. 222, 227 (609 SE2d 154) (2005) (similar); *Frost*, 286 Ga. App. at 697 (1) (pressures such as dissatisfaction with counsel and concern that the defendant will be found guilty "do not necessarily give rise to the manifest injustice required to withdraw a plea after sentencing" (footnote omitted)). Accordingly, we affirm.

*Judgment affirmed. McFadden, P. J., and Branch, J., concur*.